IN THE MATTER OF JOHN L. LEHET, AN ATTORNEY
AT LAW.

Argued Sept. 13, 1983 and January 10, 1984—Decided March 9, 1984.

*David E. Johnson, Jr.,* Director, argued the cause on behalf of Office of Attorney Ethics.

*Anton J. Hollendonner* argued the cause for respondent.

PER CURIAM.

This matter arose from a report of the Disciplinary Review Board recommending a three-year suspension based primarily on several allegations of respondent's misuse of clients' funds and inadequate recordkeeping. After oral argument, the Court referred to the District Ethics Committee an additional matter involving respondent's misuse of a client's funds. Following receipt of the Committee report on that matter, we heard further oral argument. We conclude that the circumstances call for disbarment.

The District VII (now District XIII) Ethics Committee (Hunterdon, Mercer, and Somerset Counties) consolidated seven complaints of misconduct for hearing. Three were dismissed with findings of no unprofessional conduct. The Board considered the Committee's findings of unethical conduct in the four remaining matters. The most serious involve two instances of mishandling of clients' funds. We discuss these two first and will summarize the others thereafter.

### Kline Matter

Respondent's misconduct came to light in December 1980 when he failed to put a promised check in the mail. The $1500 check represented the proceeds of a car accident case. Mrs. Kline, the dissatisfied client, brought the matter to the attention of the Division of Ethics and Professional Services (now the Office of Attorney Ethics). Because of the overtones of a trust account diversion, that office referred the letter to the Committee and wrote to respondent on March 6, 1981, requesting an explanation of the facts and circumstances involved. Respondent did not reply. The client withdrew her complaint after she settled the matter with respondent. The Division remained concerned. Following a demand for production of books and records, the Division's auditor visited respondent on May 5, 1981. The auditor learned that respondent had indeed turned over the insurance proceeds to his client promptly after receipt but had not used a trust account for that purpose; instead, he simply endorsed the $1500 check over to the client and received her personal check for his fee.

In response to a request to produce his clients' ledger book, respondent stated that he did not maintain one. An on-the-spot perusal of one month of respondent's bank statements and cancelled checks made clear that respondent was in violation of *R.* 1:21–6 because he failed to maintain required records and he used the trust account for personal expenditures. An audit could not be done at that time because there were no trust account records. Respondent asked for time to put his affairs in

order. A followup visit on May 22, 1981, revealed serious deficiencies in the "reconstructed" trust account records. That audit showed that respondent used his trust account to pay $1992 on a personal mortgage, $265 for payroll, $6159 to buy a car, and $2085 to buy another car; that the account was at one point short $4572 to cover recorded deposits of $15,819 for two clients; and that his business account contained numerous overdrafts and checks returned for insufficient funds, and had been the subject of a 1980 IRS levy.[1]

The respondent admitted these recordkeeping deficiencies but insisted that the funds used for personal purposes were his own and not those of his clients. The Committee concluded that although he did not have any criminal intent to misuse the funds, his actions violated *DR* 1–102(A)(6) (conduct adversely reflecting on fitness to practice law) by maintaining overdrafts and allowing the IRS to levy on his accounts, by generally failing to maintain a proper recordkeeping system in violation of *R.* 1:21–6, and by failing to separate clients' funds in violation of *DR* 9–102.

## Nuhn Complaint

This matter involves respondent's misuse of or failure to segregate $3000 of clients' funds that were escrowed to cover a disputed builder's lien on the Nuhns' home. They complained of respondent's neglect in prosecuting an action against the builder, of his wrongful withholding of these $3000, and of his failure

---

[1]Upon receipt of this information, the Board voted on June 17, 1981, to suspend respondent temporarily, but the motion was denied based on respondent's statements that no clients had been harmed and he had established new recordkeeping procedures.

Respondent compounded his difficulties in August 1981, however, when, in violation of *R.* 1:5–6(d), he failed to cover several checks to the Clerk of the Superior Court that were returned for insufficient funds. He also failed to respond to two other pending ethics complaints. On motion of the Board to compel compliance with these demands, he was temporarily suspended on January 27, 1982. 88 *N.J.* 633 (1982). That suspension continued in effect throughout these proceedings.

to clear the lien. The Committee found that the lien had expired by virtue of the passage of time and that the title company had told respondent it was not necessary to continue holding the money. The problem was that respondent had never set the funds aside and had no records to show what he had done with the $3000. Respondent admitted that he probably disbursed these funds in error, although he had no records of when or how this occurred.[2] The Committee found this to be another clear instance of failure to keep adequate records of clients' funds.

The Committee found two other instances of misconduct. In one, respondent issued three checks to the Clerk of the Superior Court between November 1980 and February 1981 that were returned for insufficient funds and never made good until this Court's Order to Show Cause on February 9, 1982. Respondent also failed to reduce to writing a contingent fee agreement in violation of R. 1:21–7(g).

The Committee concluded that the respondent's conduct warranted discipline:

> Generally, the Panel feels the Lehet matters fall squarely within the bounds of the Supreme Court's decision in the matter entitled [*In re Katz*, 90 *N.J.* 272 (1982) (attorney disbarred after seven instances of neglect)] * * *. Taken together, Mr. Lehet's conduct "reflects a lack of awareness of the degree of professionalism expected of every member of the bar." While there did not appear to be any criminal undertones in Mr. Lehet's actions, his naivete is something the profession of law can do without.

The Board agreed with the basic findings of the Committee. In addition, it considered as ethical violations respondent's failure to file answers in the two matters that led to his suspension; his alleged non-compliance with the Board's Regulation 13,

---

[2]After the Committee hearing, respondent repaid the $3000 to the Nuhns. Since the Nuhns had already received $3000 from the Client Security Fund, they turned the money over to the Fund.

which requires notice to clients of an attorney's suspension; and his failure to cooperate in the audits.[3]

Nonetheless, while the Board found that respondent did misappropriate the Nuhns' funds, by a divided vote it did not consider the matter to warrant disbarment. Rather, since these events began in the latter half of 1979, coinciding with *In re Wilson,* 81 *N.J.* 451 (decided December 19, 1979), the Board followed *In re Smock,* 86 *N.J.* 426 (1981), which applied *Wilson* prospectively and ordered a two year suspension for misappropriation due to multiple mitigating factors. In respondent's favor, the Board found that he had no prior history of disciplinary infractions, unlike the situation in *In re Katz,* 90 *N.J.* 272 (1982).

What tips the scale for us is the remaining matter that was not before the Board and that we reviewed directly on the report of the Committee.

### Marlin Matter

This matter is similar to *Nuhn* in that it involves the failure to segregate and the possible misuse of a client's closing funds. The Marlin closing occurred on July 20, 1981. The respondent was to place in escrow $2211 of the seller's proceeds to pay property taxes, IRS liens, and a judgment. In addition, he received funds from the client to pay title and survey charges. He failed to pay any of these items from the escrowed funds. A 1982 bank examiner's audit revealed the deficiency and the bank brought the matter to the attention of the Committee.

At the hearing before the Committee, it was stipulated that respondent represented Mrs. Marlin, that he escrowed $2,211.03 for specific purposes, and that these funds were not forwarded or paid to the provider of services for which the specific funds were set aside. Respondent argued that the freezing of his

---

[3]We also consider as part of the Board's initial report another stipulated matter, *Lippincott,* involving $112.50 of unsegregated closing funds.

accounts in January 1982 prevented him from resolving these matters. But he admitted that the balance in his trust account when suspended was only $1200, one thousand dollars less than he should have had in escrow. The Committee found this another specific instance of respondent's failure to preserve the identity of his clients' funds and failure to maintain adequate records in violation of *DR* 9–102.

Upon an independent review of the record, the Court is satisfied that the respondent has been proven guilty of unethical conduct in these matters by clear and convincing proof. In the *Marlin* matter, where we retained jurisdiction, we are independently satisfied without further findings by the Board that the stipulation and exhibits demonstrate clearly that the conduct occurred.

Respondent has been represented throughout these proceedings by counsel of extraordinary candor and concern. He and his client have cooperated in frankly setting forth the facts and circumstances that we must consider. Counsel has ably and forcefully urged that we accept the Board's recommendation of suspension and not disbarment, viewing the *Marlin* incident as part of that same pattern of neglect and inadvertence. Yet, we find inexcusable that this last matter took place in July 1981, after the Division's auditor had warned respondent of his shortcomings and after this Court had refrained from temporarily suspending him: "We cannot help but conclude that the respondent has totally failed to heed the warnings given him heretofore in the disciplinary actions." *Katz*, 90 *N.J.* at 283.

These incidents do not represent the errors of an inexperienced attorney opening a new office, *In re Stern*, 92 *N.J.* 611 (1983), or a single isolated incident of inadequate recordkeeping, *Matter of Hennessy*, 93 *N.J.* 358 (1983). Taken together, the incidents reflect disregard for the high degree of concern this Court has expressed for preserving public confidence in the

integrity of the bar through careful handling of clients' funds. *In re Wilson*, 81 *N.J.* 451 (1979).

The offenses are grave. Giving every benefit of the doubt to respondent, we must conclude that he has flagrantly and repeatedly violated his responsibility to segregate his clients' funds from his own pursuant to *DR* 9–102(A), and to comply with the recordkeeping requirements of *R.* 1:21–6.

Respondent's name will be stricken from the Roll.

We further direct the respondent to reimburse the Office of Attorney Ethics for costs, including the production of transcripts.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

## ORDER

It is ORDERED that JOHN L. LEHET of TRENTON be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that JOHN L. LEHET be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that JOHN L. LEHET comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys; and it is further

ORDERED that respondent reimburse the Office of Attorney Ethics for appropriate costs, including the production of transcripts.