IN THE MATTER OF ALFRED T. HENNESSY, JR., AN ATTORNEY AT LAW.

Argued April 19, 1983—Decided June 14, 1983.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant Disciplinary Review Board.

*Alfred T. Hennessy, Jr.,* argued the cause *pro se.*

PER CURIAM.

This disciplinary proceeding arose as a result of a complaint filed by Hugh McKittrick against respondent, a member of the

bar, who never acted as Mr. McKittrick's attorney. The complaint was filed in July 1980 and concerned a real estate closing that occurred on June 17, 1969. The matter was heard by the District IX Ethics Committee, whose presentment was submitted to the Disciplinary Review Board.

The respondent represented Mr. and Mrs. Morris Tetro, purchasers of a certain property in Union Beach from the East Coast Home Building Corporation. The Corporation was owned by Mr. McKittrick, represented by John W. Applegate, and by Mr. P. Koban, represented by Ralph S. Heuser, Jr. At the closing there was a balance due the seller of $3,434.42. Because of a disagreement between McKittrick and Koban, the respondent, with the consent of the parties, was given the $3,434.42 at the closing. Neither Mr. Heuser nor Mr. Applegate had any recollection of what had transpired after the closing with respect to these funds. No one questioned the whereabouts of the $3,434.42 until ten years later when McKittrick demanded the money from the respondent. Hennessy did not have the funds in his trust account and he could not recall what had happened to the $3,434.42. In 1973 the respondent had disposed of his canceled checks and accounting records when he combined his living and office quarters. However, he had retained the real estate file, which reflected that he had obtained a title policy from the Commonwealth Title Insurance Company, whose business was handled by Harold Stern. Mr. Stern had retired and lives in Florida. Respondent thereupon communicated with Mr. Stern, who stated that he had "agreed to issue the Title Policy, provided the net proceeds of the Closing were left with [Stern] in escrow until all of the title problems were cleared." Mr. Stern also wrote that when he "cleared out [his] affairs with Commonwealth Realty Abstract, there were unallocated funds and this file was apparently the reason."

The Disciplinary Review Board concluded upon its review that the evidence "does not clearly and convincingly demonstrate that respondent actually received the funds or that he utilized those funds for his own purposes, and the passage of more than

thirteen years since the events in question makes further reconstruction of those events nearly impossible." We have come independently to the conclusion that the record does not clearly and convincingly demonstrate that respondent utilized those funds for his own or any improper purpose.

It also became apparent at the hearings before the District Ethics Committee that respondent, at least from 1973 on, did not maintain a ledger book, that the checkbook stubs were the only documentation of his trust account, and that checks drawn on the trust account were made payable to his wife, who acted as his secretary, and to himself for personal expenses. Respondent apparently has had relatively few legal matters at any one time. He testified that on any one occasion he could allocate all the funds in the trust account to particular files and that the trust account balance had never been less than that which should have been allocated to the various files.

As a result of the disclosures concerning respondent's inadequate accounting procedures, an audit was made of his trust account for the period from January 1, 1980 to July 31, 1981. The audit indicated that at times there were some relatively minor shortages in the account and that these shortages were not attributable to any client. The District Ethics Committee did not hold a hearing after receipt of the audit report. No one has charged that any misappropriation has occurred. Whatever shortages existed appear to have been due to shoddy bookkeeping. The Disciplinary Review Board concluded that respondent's problems stemmed from flagrant record keeping errors combined with an apparent lack of comprehension of the proper operation of an attorney's accounts. We agree. He has unquestionably violated DR 9–102 and DR 1–102, but it is also unquestionably clear that he never intended to misappropriate funds.

Respondent was admitted to the bar in 1952 and has an unblemished record. He conducts a limited practice out of his home. He has represented to us that he has installed a bookkeeping system that complies with the auditor's instructions and

*R.* 1:21–6. He shall submit his books and records to the auditor, who previously reviewed this material for examination, within thirty days from the date of this opinion to assure that there is compliance with *R.* 1:21–6. The auditor is to submit a report to the Division of Ethics and Professional Services. Under these circumstances, there being no intentional use of funds belonging to others, we are of the opinion that respondent should be and hereby is publicly reprimanded. Respondent shall reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts and all auditing costs.

*For reprimand*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

## ORDER

The Disciplinary Review Board having filed a report with this Court charging ALFRED T. HENNESSY, JR., of UNION BEACH with unprofessional conduct, and good cause appearing;

It is ORDERED that ALFRED T. HENNESSY, JR., be and hereby is publicly reprimanded and that a permanent record of this reprimand shall be retained in respondent's file; and it is further

ORDERED that respondent shall submit his books and records for an audit to determine whether there is compliance with *R.* 1:21–6 within 30 days from the date of this opinion; and it is further

ORDERED that ALFRED T. HENNESSY, JR., reimburse the Administrative Office of the Courts for appropriate administrative costs incurred in this matter, including the production of transcripts and all auditing costs.