IN THE MATTER OF RONALD SCHWARTZ, AN ATTORNEY AT LAW.

Argued March 19, 1985—Decided June 27, 1985.

*Colette A. Coolbaugh,* Counsel, argued the cause on behalf of the Disciplinary Review Board.

*Richard E. Salkin* argued the cause for respondent.

PER CURIAM.

This case concerns respondent's representation of a client in an appeal to the Appellate Division from a Bergen County

District Court judgment rendered against her in a landlord-tenant case. The client, Ms. Schulz, filed a complaint with the District II Ethics Committee (Committee) in which she alleged that the respondent failed competently to handle her appeal to the Appellate Division and that he improperly withdrew as her attorney. The Committee dismissed the complaint after a hearing. Ms. Schulz appealed, and the Disciplinary Review Board (DRB) reversed the Committee's dismissal. After a hearing, the DRB found by clear and convincing evidence that respondent "violated *DR* 6–101(A)(1) in that his failure to properly pursue the appeal despite the client's failure to pay the requested retainer constituted gross negligence," and that "he violated *DR* 2–110(A)(2) by improperly withdrawing from employment." The DRB recommended that respondent be suspended from the practice of law for three (3) months. We agree.

I

Respondent was admitted to the Bar of New Jersey in 1971 and was an Assistant Prosecutor in the Bergen County Prosecutor's Office. In 1978 he went into general practice with two other attorneys. Neither at the Prosecutor's Office, where he had been assigned to the trial section, nor in private practice did respondent do any appellate work. The appeal involved herein was the first appellate matter respondent handled.

The respondent did, however, have substantial experience in the field of tenants' rights. In 1978 respondent was active in the New Jersey Tenants' Organization where he provided free legal counseling once a week, and in the New Jersey Tenants' Research and Educational Development Organization. He was also Chairman of the Cliffside Park Rent Leveling Board. Respondent continues to be active in the field of tenants' rights, both as a professional and a volunteer.

After respondent had been in private practice for approximately nine months, the New Jersey Tenants' Organization requested that he represent, without charge, Ms. Schulz in a

summary dispossess action in the Bergen County District Court. Prior to retaining the respondent, Ms. Schulz had been involved in litigation with her landlord that included six court appearances. In two of these appearances she was represented by private attorneys, in two by attorneys from Legal Aid, and two appearances were *pro se.*

Included among these appearances was one occurring in April of 1979, in which she was represented by a private attorney in connection with a dispute with her landlord. She had paid her monthly rent into court for approximately five months and asked for a rent abatement on the ground that the premises were not habitable. Subsequent to an adverse ruling by Judge Taylor, she again withheld her rent.

In June 1979 respondent represented Ms. Schulz in a similar dispute with her landlord. The trial, which lasted for two days before Judge Franklin, resulted in a ruling against Ms. Schulz. Respondent did not charge Ms. Schulz a fee for his representation.

At this time Ms. Schulz told respondent that she was unhappy with the result of the April 1979 case and asked him to appeal the case for her. Respondent agreed to represent Ms. Schulz in her appeal for a fee of $200. Although Ms. Schulz denies it, respondent claims that he told her he wanted a $100 retainer before he would start work on the brief. No written retainer agreement was entered into by the parties. On July 6, 1979, respondent filed a notice of appeal to protect Ms. Schulz's rights. However, he claims that he did not believe that filing the notice would commence his representation, that he was doing her a favor, and that this would be the end of the matter because he did not believe she could obtain even the $100 retainer.

The notice of appeal filed in July was rejected by the Clerk of the Appellate Division because respondent failed to submit the proper transcript request form. There were other problems with the filing fee and the filing of the original transcript, but

these problems were corrected. On August 14, 1979, the notice of appeal was deemed filed.

Between July 1979 and November 1979 respondent had many conversations with Ms. Schulz. He claims he repeatedly told her he would not pursue the appeal unless he received the $100 retainer. On November 28, 1979, he sent a letter to Ms. Schulz stating:

> We are in the process of preparing the Brief and Appendix for your appeal. It should be done shortly. However, we note that you have not sent in a retainer for our fee in this case.
>
> Kindly send us $100.00 for the retainer, so that we can continue working on your appeal. Of course, the retainer is applied against the final fees.

Ms. Schulz claims that until she received this letter, she was unaware that the $200 fee had not been paid. She further claims she was never told that nothing would be done on her appeal until the retainer was paid. Ms. Schulz was expecting respondent's fee to be paid by one of her friends. Upon receipt of respondent's letter Ms. Schulz informed respondent that his fee was supposed to have been paid by another, but that it appeared unlikely that the person who had promised to pay his retainer would do so. However, she assured him that she would continue to try to obtain the money for him.

When respondent had not received the money by January 24, 1980, he sent Ms. Schulz a letter, which stated:

> We are running out of time to perfect your appeal and you still have not retained this firm to represent you. The requested retainer of $100.00 is well below what we normally require for an appeal. As I indicated to you in our letter of November 28th, 1979, it is just not fair for us to work on this appeal without having been retained.
>
> You must act soon or the appeal will be dismissed. . . .

Respondent received $200 on February 7, 1980 from the law firm that had previously represented Ms. Schulz. Upon receipt of the fee, respondent testified that he "began quickly working again on a rather quick brief which was to be submitted with a motion to file the brief *nunc pro tunc*." The brief took him about five hours to complete. In testimony before the Committee, the respondent stated that he filed the brief and appendix

in a timely fashion near the end of February. The respondent claims that at the time the brief and appendix were prepared and filed, he employed "a temporary girl who was working with him." The respondent testified that he instructed the temporary secretary to send a copy of the brief and appendix to the Appellate Division and to his adversary.

On April 8, 1980, the Appellate Division, on its own motion, dismissed the appeal for failure to file a brief. When notified of this, respondent assumed that this dismissal pertained to his motion to file the appellate brief *nunc pro tunc*. In a letter dated April 24, 1980 Ms. Schulz's former attorney asked respondent to return the $200 because the appeal had been dismissed. In a letter the following day, respondent advised the attorney that he was "in the process of preparing a Motion to reinstate the Appeal" and would inform him of the outcome. While respondent stated that he was preparing a motion, he testified that he meant he intended to prepare the motion. However, he later changed his mind after discussing the matter with his partners, who were upset with him for spending so much time on the case. He decided there was no basis for restoring the case, and claims he orally informed Ms. Schulz of this decision sometime during May 1980. Sometime in the following month, he informed Ms. Schulz's former attorney that he did not intend to proceed with the motion.

When Ms. Schulz asked for a copy of the brief, respondent discovered that there was no copy of the brief or appendix in his file, nor could he find a copy of the transmittal letter. Sometime in May 1980 he telephoned the Clerk of the Appellate Division to obtain a copy of the brief. At that time, he was informed that it had never been received. Neither the respondent's adversary nor the Appellate Division had ever received a copy of the brief or appendix. Respondent does have notes of the trial transcript, which he alleges he used in preparation of his brief. Because the "temporary girl" had moved to South Carolina, he was unable to locate her to testify on this matter.

Respondent did not tell Ms. Schulz about the missing brief until either May or June, 1980 and did not respond to her telephone calls because he was embarrassed. Nevertheless, in July 1980 Ms. Schulz requested that respondent represent her in another summary dispossess action. Although she advised him she had no funds for an attorney, he represented her without a fee in this matter, which resulted in a two-day hearing.

Because he represented Ms. Schulz in this latest matter, respondent determined that he was entitled to keep the $200 fee and apply it to the other matters wherein he had served as her attorney. When he informed her of his decision, she objected and wanted the money repaid. Thereafter, she filed a complaint with the District Ethics Committee. Respondent returned the fee to Ms. Schulz's former attorney on September 18, 1981.

## II

In *In re Palmieri*, 76 *N.J.* 51, 58–59 (1978), we stated that while representation of a client is a consensual relationship founded upon a lawyer affirmatively accepting a professional responsibility, "such acceptance need not necessarily be articulated, in writing or speech but may, under certain circumstances, be inferred from the conduct of the parties."

In this appeal, the parties disagree as to when respondent commenced to represent Ms. Schulz. Respondent contends he advised her he would not represent her until he received the $100 retainer; she denies this and contends he became her attorney when he filed the notice of appeal.

This disagreement is understandable in view of the history of their relationship. Both respondent and Ms. Schulz were active in the field of tenants' rights. Because of respondent's activities with tenants' groups he met Ms. Schulz. He first represented her in a summary dispossess action, in which he neither requested nor expected a fee. After this representation, Ms.

Schulz, who appears to have been involved in a continuous dispute with her landlord, called respondent numerous times for advice concerning various complaints against her landlord. Respondent freely gave advice, again for which he neither requested nor expected a fee. Even after his handling of the appeal, at Ms. Schulz's request respondent represented her in a summary dispossess trial without charging a fee. Only in the appeal did respondent request a fee to represent Ms. Schulz. In light of this history, it is understandable that Ms. Schulz did not comprehend that respondent was not going to represent her in this appeal until he received the retainer. As the DRB aptly observed,

> [t]he unhappy sequence of events surrounding the appeal can be summarized as a lack of communication, particularly by Respondent.

Moreover, although respondent did not believe he was representing Ms. Schulz until he received the $100 retainer, the record is clear that he never directly told her that he would not handle her case. In his November 28, 1979 letter, for example, he sought to convey this by inference. He informed her that he was "in the process of preparing the Brief and Appendix" for the appeal and "send us $100.00 for the retainer, *so that we can continue working on your appeal.*" (Emphasis added). Even in his January letter in which he states "you still have not retained this firm to represent you," he added "it is just not fair for us to work on this appeal without having been retained."

■ The respondent knew that Ms. Schulz depended on him to handle her appeal. In *In re Hurd,* 69 *N.J.* 316 (1976), we specifically affirmed our holding in *In re Gavel,* 22 *N.J.* 248 (1956), that the fiduciary obligation of a lawyer applies to persons who, although not strictly clients, he believes or has reason to believe rely on him. 69 *N.J.* at 330. Thus, based on our independent review of the record, we agree with the DRB's finding that

> [t]he facts in this case clearly establish that Respondent entered into an attorney-client relationship with Ms. Schulz. He agreed to perform certain legal services for her and she relied upon his representation. If Respondent

had reservations or conditions concerning his representation of Ms. Schulz, he should have expressed them immediately. The Board finds that Respondent had, in fact, entered into an attorney-client relationship with Ms. Schulz when he filed the notice of appeal.

## III

As Ms. Schulz's attorney, respondent owed her a duty to pursue the interests of his client diligently. *See Matter of Haft*, 98 *N.J.* 1, 7 (1984); *In re Goldstaub*, 90 *N.J.* 1, 5 (1982). The respondent made several errors in handling this appeal, including his failure to keep Ms. Schulz aware of the status of the appeal. In fact, it is clear that respondent was equally unaware of that status. In *In re Palmieri*, 75 *N.J.* 488, 489 (1978), we held that an attorney is obligated to establish an office procedure so that both he and his clients are kept informed of pending matters. It is evident that respondent's office procedures were not adequate. However, these offenses do not rise to a level compelling a suspension.

The critical issue here is whether the record supports the conclusion that respondent prepared and filed a brief for Ms. Schulz's appeal. Before both the Committee and the DRB, respondent maintained he had prepared and filed a brief. Although we recognize that respondent's regular secretary was on vacation and that he hired a temporary employee from the business school behind his office at the time the brief was supposedly typed, the only indication of the preparation of the brief is respondent's notes of the trial transcript that he claims to have used in drafting the brief.

There is, however, no corroboration that respondent ever filed the brief. Neither the Appellate Division, the respondent's adversary, nor the respondent himself has either a copy of the brief or a transmittal letter forwarding the brief to the Appellate Division. Nevertheless, a majority of the Committee accepted respondent's testimony as to the circumstances surrounding the missing documents. The DRB, however, concluded that although there was not clear and convincing evidence to

establish that respondent did not prepare a brief, there was sufficient evidence to establish that no brief was ever filed. Our independent review of the record leads us to agree with these conclusions.

## IV

■ Once an attorney undertakes to represent a client, he cannot withdraw from employment without properly advising his client of his intention to do so. *DR* 2-110(A)(2) provides that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

It is clear that respondent violated this Disciplinary Rule. After respondent learned that Ms. Schulz's appeal had been dismissed, he informed his client and her former attorney that he was "in the process of preparing a motion to reinstate the appeal." This was not true. The fact was that he simply intended to prepare the motion. Then, without any discussion with his client, respondent decided not to appeal the case and did not convey this decision in writing to his client. Although respondent claims that he told both Ms. Schulz and her former attorney he had changed his mind about the appeal, there is a dispute as to whether this decision was ever conveyed, even orally, to his client. Once an attorney states that he is going to perform services for a client, he has the burden of properly advising his client he is going to withdraw. *DR* 2-110(A)(2). Respondent failed to satisfy this obligation.

■ In addition, respondent eventually received a fee in this matter. In *In re Jahnke*, 58 *N.J.* 557, 558 (1971), we held that a lawyer who accepted a retainer on behalf of a client to institute suit, but did virtually no work in connection with the matter, was guilty of conduct that was unethical and unprofessional.

Similarly, an attorney cannot apply a fee received for representation in one legal matter to another matter, even for the same client, without the client's permission, as respondent attempted to do here. While we understand respondent's frustration at having performed so much legal work for Ms. Schulz without receiving a fee, he voluntarily undertook that commitment. Without his client's consent, he cannot shift a fee he received for one matter as payment for work he agreed to do without a fee.

V

The purpose of discipline is not to punish the offender but to preserve the public's confidence in the bar. After an independent review of the record, we reach the same conclusion as the DRB that respondent be suspended from the practice of law for three months.

The respondent contends that punishment here should not be a suspension but a public reprimand. We disagree. He bases his argument on two prior cases in which public reprimands were imposed on attorneys who failed to file appellate briefs. *In the Matter of Haft*, 98 *N.J.* 1 (1984); *In the Matter of Loring*, 62 *N.J.* 336 (1973). In *In re Loring*, there was no question that respondent had prepared the brief. In that case, we held that "[w]hile we will not find deliberate failure to file a brief, we conclude that respondent's whole course of conduct in relation to the handling of the appeal and his attitude towards his client merits our strong disapproval." *In re Loring, supra,* 62 *N.J.* at 347.

In *In the Matter of Haft, supra,* 98 *N.J.* 1, for his failure to file a brief the respondent was publicly reprimanded. However, the record clearly demonstrates that if it had not been for an administrative oversight that delayed the processing of that ethics complaint for more than four years, the discipline imposed would have been more than a reprimand.

While we disagree with respondent as to the appropriateness of a reprimand here, we do recognize the existence of certain

mitigating factors. The respondent cooperated throughout the ethics proceedings. The problems of respondent arose because of his inexperience in private practice, particularly appellate work, and his unusual relationship with Ms. Schulz. We think it is significant that after respondent handled this appeal, she requested that he represent her in another landlord-tenant matter, which he agreed to do on a voluntary basis. While this does not excuse respondent's actions in this case, it does indicate that despite his mishandling of the appeal the client continued to have confidence in his ability to represent her.

Further, Ms. Schulz's retainer has been repaid. In addition, respondent's ultimate determination that there was no basis for appeal is clearly supported by the record in that case. The appeal would have reasserted certain habitability defenses in a dispossess case. The same contentions had been rejected previously by two judges. Moreover, the trial attorney testified that the reason he did not appeal the case was that he did not feel there was any basis to succeed on the merits.

While inexperience is no excuse, it tends to explain both respondent's confusion over whether he actually represented Ms. Schulz without the payment of a retainer and the various mishaps in the handling of the appeal. Moreover, Ms. Schulz's failure to pay even a nominal retainer may have raised questions in respondent's mind about her seriousness in pursuing the appeal.

Despite these mitigating factors, respondent's offense is a serious one. He undertook to pursue an appeal. He failed to do so and failed to so advise his client in a timely manner. After a careful review of the record we are not prepared to disagree with the conclusions of the Committee and the DRB, before whom respondent testified, that he did not prepare the brief. However, there is no doubt a brief was not filed or served for Ms. Schulz's appeal.

We are not unmindful that aside from this incident, respondent's record is unblemished. Nevertheless, a lawyer has the duty to represent his client diligently. Accordingly, we hold

522

that respondent's ethical infractions call for suspension from the practice of law for a period of three (3) months. We also impose upon respondent the obligation of reimbursing the Ethics Financial Committee for appropriate administrative costs, including those for the production of transcripts.

So ordered.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.

## ORDER

The Disciplinary Review Board having filed a report charging RONALD SCHWARTZ, of HACKENSACK, who was admitted to the bar of this State in 1971, with failing to competently represent a client, contrary to *DR* 6–101(A), and improperly withdrawing from employment, contrary to *DR* 2–110(A)(2), and good cause appearing

It is ORDERED that RONALD SCHWARTZ is suspended from the practice of law for a period of three months, effective July 15, 1985, and until further order of this Court; and it is further

ORDERED that RONALD SCHWARTZ be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that RONALD SCHWARTZ shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs for the production of transcripts; and it is further

ORDERED that RONALD SCHWARTZ comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.