IN THE MATTER OF RALPH FUCETOLA, III, AN ATTORNEY AT LAW.

October 29, 1985.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that RALPH FUCETOLA, III, of NORTH ARLINGTON, who was admitted to the Bar of this State in 1971, be publicly reprimanded for not maintaining proper records in violation of *DR* 9–102(C) and 1–102(A)(6), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded for his violation of *DR* 9–102(C) and 1–102(A)(6); at it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said RALPH FUCETOLA, III, as an attorney at law of the State of New Jersey; and it is further

ORDERED that RALPH FUCETOLA, III, reimburse the Ethics Financial Committee for appropriate administrative costs.

## Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board based upon a report filed by the District II (Bergen County) Ethics Committee, recommending that a private reprimand be issued due to inadequate record keeping. The Board makes the following findings of fact:

AUDIT–I.

On November 18, 1982 Respondent's books and records were audited at the direction of the then Division of Ethics and Professional Services (DEPS). This audit resulted from a claim by the Morristown Daily Record that it never received a check for $637.47 on account of collections made by Respondent on its behalf. The check, payable to Respondent, was dated December 1, 1978 and was deposited by Respondent on January 17, 1979. Respondent issued a trust account check on January 16, 1979 payable to the Daily Record for $637.47. This was the net amount after deducting his legal fee of 25 per cent. The bank statement dated January 23, 1979, indicated that the check cleared the bank. However, the check for the gross amount of $849.47 was returned unpaid by the bank on January 22, 1979. That check was never redeposited. In examining Respondent's records, the auditor noted that Respondent "lumped all collec-

tions from various cases on one card." No running balance was maintained on the ledger card.

The auditor selected two trust ledger cards for testing. In one case, disbursements exceeded known receipts by $1,062.57. In the second case, disbursements exceeded known receipts by $2,306.12. The auditor checked two additional files and discovered that in one case no receipts were recorded on the trust ledger card, but the file showed evidence of a $4,500.00 receipt. In the second case, Respondent did not have a trust ledger card for the file. Based on his review of Respondent's books and records, the auditor concluded that Respondent did not maintain a running balance of his cash receipts and disbursements in his trust account. There were no bank reconciliations or reconciliations of trust ledger cards. Not all receipts deposited to the trust account were recorded in his accounting system. The auditor concluded that Respondent did not maintain his trust records in accordance with *R.* 1:21–6.

AUDIT II.

Respondent's books and records were audited for the second time January 31, 1983 after DEPS received a letter from the United States Bankruptcy Court dated January 4, 1983 indicating that Respondent's check for a $60.00 filing fee was returned for insufficient funds. Although Respondent was advised by letter dated November 24, 1982 that the check had to be replaced immediately, Respondent did not make good on the check until January 7, 1983. An audit of Respondent's books and records revealed that his bank account showed that the account was in an overdrawn condition at various times. The bank statement for October, 1982 revealed that the opening balance was negative $157.35 and the closing was negative $407.89. Fifteen return item charges or overdraft charges were incurred during that period. Respondent told the auditor that the bank unilaterally closed his account because of the overdrawn condition, adding, however, that Respondent's father had resolved the account overdraw. The audit revealed

that Respondent's clients' trust ledger was not maintained on a current basis. The audit further disclosed that Respondent had issued trust checks against uncollected funds and in excess of available funds standing to the credit of the client.

On December 6, 1983 a two-Count ethics complaint was filed against Respondent charging that as a result of the audits, he violated *DR* 9-102. Respondent filed an answer January 15, 1984. During the Ethics Committee hearing on June 20, 1984 Respondent stipulated to facts contained in the audit reports and complaint. Respondent informed the Committee that about 15% of his practice was devoted to the general public practice of law, with the balance devoted to a family operated business. Respondent stated that an accountant has reconstructed his records and that he has hired a bookkeeper to maintain these records according to court rules. He added no clients were injured as a result of his inadequate record keeping. The Committee found Respondent's conduct unethical and unprofessional and recommended that a private reprimand be issued, finding that this would constitute adequate discipline in light of the corrective measures undertaken by Respondent.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Ethics Committee in finding unethical conduct on the part of Respondent are fully supported by clear and convincing evidence.

Factually, there is no dispute regarding the charges. Respondent concedes that his record keeping did not comply with *R.* 1:21-6. Audits conducted November 18, 1982 and January 31, 1983 established the improper record keeping practices of Respondent. The Board finds that Respondent's conduct in not maintaining proper records violated *DR* 9-102(C) and 1-102(A)(6).

The purpose of discipline is to protect the public from the attorney who does not meet the standards of responsibility of

every member of the profession. *In re Goldstaub,* 90 *N.J.* 1, 5 (1982). Mitigating factors are relevant *In re Hughes* 90 *N.J.* 32, 36 (1982). Admission of wrong doing is a mitigating factor in Respondent's favor. *In re Rosenthal,* 90 *N.J.* 12, 17 (1982).

Respondent, who was admitted to the bar in 1971, has acknowledged that his records were not properly maintained. No client was injured because of Respondent's misconduct. Respondent has taken steps to maintain proper records by hiring a bookkeeper. "[R]espondent's problems stemmed from flagrant record keeping errors combined with an apparent lack of comprehension of the proper operation of an attorney's accounts." *Matter of Hennessy,* 93 *N.J.* 358, 360 (1983). There is no evidence in the record that he misappropriated clients' funds. *Ibid.*

In evaluating the appropriate discipline in this matter, the Board has considered the fact that this is Respondent's second disciplinary action. He was privately reprimanded in 1979. Inadequate record keeping is a serious act of misconduct. Not only does it reflect adversely upon the profession, the potential for injury to a client is great. The Board concludes that public discipline is warranted. The Board, therefore, recommends that Respondent be publicly reprimanded for his conduct.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.