**In re William REBACK and Charles C. Parsons, Members of the Bar of the District of Columbia Court of Appeals.**

**No. 83–1289.**

District of Columbia Court of Appeals.

Argued En Banc Sept. 18, 1985.
Decided July 31, 1986.

---

David Epstein, Washington, D.C., for respondents.

Elizabeth J. Branda, Asst. Bar Counsel, Washington, D.C., for Board on Professional Responsibility, petitioner (minority).

Joan Goldfrank, Executive Atty., Washington, D.C., for Board on Professional Responsibility, petitioner (majority).

Before PRYOR, Chief Judge, and NEBEKER, MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS and STEADMAN, Associate Judges.

BELSON, Associate Judge:

In this Bar discipline matter, we granted the respondent attorneys' petition for rehearing en banc and vacated the opinion of a division of this court suspending the attorneys from the practice of law for a year and a day. *In re Reback and Parsons,* 487 A.2d 235 (2–1 decision), *vacated,* 492 A.2d 267 (D.C.1985). The en banc court agrees with the division's unanimous holding concerning the respondents' alleged violations of certain disciplinary rules, but disagrees with the division majority's holding concerning sanction. Instead, we order both Reback and Parsons suspended for a period of six months, beginning 30 days from this date.

We repeat the division's summary of the factual and procedural history of the case:

Rosemary Lewis retained the firm of Reback and Parsons to pursue her divorce claim. While Reback was the only attorney to whom Lewis ever spoke, Parsons took responsibility for the case. He filed a verified complaint in the Superior Court.

Some months later, the court issued a warning notice pursuant to Super.Ct. Dom.Rel.R. 41(f), which provides that a case that is not at issue within six months after its filing date shall be dismissed after notice to the attorneys. Owing apparently to a defect in the firm's case-handling procedures, neither Reback nor Parsons saw the notice. The case was dismissed without their knowledge.

Shortly after the dismissal, Lewis' brother telephoned Reback to inquire about the progress of the case. Reback and Parsons then discovered that the case had been dismissed. They did not tell Lewis or her brother. Instead, they prepared a second complaint, identical in substance to the first.

The second complaint purported to be verified by Lewis. Instead of obtaining Lewis' signature, however, Reback signed Lewis' name to the complaint in the presence of Parsons. One of the two lawyers—or a secretary acting at their direction—then had the complaint notarized. Whoever took the complaint to the notary necessarily represented that the signature was genuine. Parsons filed the complaint, knowing that the signature was false.

The partners then assigned the case to an associate. They told the associate to come to them if he had questions. Other than giving him that instruction, they did not supervise him. He had trouble obtaining the required proofs of publication of notice to Lewis' husband. After another warning from the court, the second complaint was dismissed for failure to put it at issue within six months. Two weeks later the attorneys had the complaint reinstated.

Five months after the reinstatement, Lewis discovered that the first complaint had been dismissed and a second one filed over her falsified signature. She asked Reback and Parsons to withdraw as her counsel, which they did. They

returned to her all the fees she had paid them.

The Hearing Committee held a hearing at which Reback and Parsons testified. They cooperated fully with the Hearing Committee and expressed remorse for their actions. The Hearing Committee found that they had violated D.R. 6–101(A)(3) (neglect of a legal matter) and D.R. 1–102(A)(5) (conduct prejudicial to the administration of justice). The Committee found no violation of D.R. 7–101(A)(1) (intentional failure to seek client's lawful objectives), D.R. 7–102(A)(5) (knowing false statement of law or fact), or D.R. 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation).[1] In recommending a sanction, the Hearing Committee put great weight on the factors mitigating the offenses, especially the fact that the attorneys had shown remorse and the fact that Reback in his 30 years of practice and Parsons in his 15 had never before faced disciplinary charges. The Hearing Committee recommended that the Board reprimand the lawyers.

Bar Counsel recommended that the Board adopt the Hearing Committee's findings and its conclusions on violations of the code. He recommended, however, that the Board increase the sanction to public censure.

A majority of the Board saw the case differently. Five of the nine Board members concluded that both Reback and Parsons had violated D.R.s 1–102(A)(4) and (5) (conduct involving dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice), 6–101(A)(3) (neglect of a legal matter), and 7–102(A)(5) (knowing false statement of law or fact), and that Reback alone had violated D.R. 7–101(A)(1)

(intentional failure to seek client's lawful objectives).[2] The Board majority recommended that this court suspend Reback for a year and a day and Parsons for 30 days.

The four-member minority of the Board concluded that both Reback and Parsons had violated only D.R.s 1–102(A)(5), 6–101(A)(3), and 7–102(A)(5). The minority saw the record as showing an unusually large number of mitigating factors. The dissenting members therefore recommended that both attorneys receive public censure.

---

[1] The cited disciplinary rules read in relevant part as follows.

D.R. 6–101(A): A lawyer shall not:

(3) Neglect a legal matter entrusted to him.

D.R. 1–102(A): A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

D.R. 7–101(A): A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules.

D.R. 7–102(A): In his representation of a client, a lawyer shall not:

(5) Knowingly make a false statement of law or fact.

*Reback,* 487 A.2d at 236–38 (footnote omitted).

▆▆▆ The division accepted the Board's recommended findings of disciplinary violations except the finding that Reback was guilty of intentional failure to seek his client's lawful objectives, D.R. 7–101(A)(1). We agree with the division in this regard, and adopt and incorporate part I of the division opinion as the opinion of the en banc court. *See Reback,* 487 A.2d at 238–41.[1]

---

1. In so doing, we observe that sections B and C of part I deal with essentially a single set of related acts and occurrences, *i.e.,* instead of informing their client that her complaint had been dismissed, respondents wrongfully caused the preparation, false signing, and filing of a second complaint. In sections B and C, the division opinion accepted the Board's recom-

mended findings of respondents' violations of D.R. 1–102(A)(5)—Conduct prejudicial to the administration of justice; D.R. 1–102(A)(4)—Conduct involving dishonesty, fraud, deceit, or misrepresentation; and D.R. 7–102(A)(5)—Knowing[ly] making of false statements of law or fact.

On this rehearing, the en banc court focused on the question of what sanction is appropriate under the circumstances. Under D.C.Bar R. XI, § 7(3), when this court reviews the Board's report and recommendation on the issue of sanction, it "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Since this is the first occasion for this court to pass upon conduct like that of respondents, there are no other cases of fully comparable conduct with which we must maintain consistency.[2] We must be concerned, however, with avoiding inconsistency as between these respondents themselves. Our resolution of this appeal avoids inconsistency by declining to follow the Board's recommendation that Reback be suspended for a year and a day and Parsons for 30 days but, instead, imposing on the two respondents equal sanctions for what we consider their equally egregious misconduct.

The Board recommended differing dispositions, concluding that Reback deserved a greater sanction than Parsons for three stated reasons: Reback violated D.R. 7–101(A)(1) intentional failure to seek client's lawful objectives), while Parsons did not; Reback spoke with Mrs. Lewis many times, while Parsons never spoke to her, circumstances that suggest that the deception and neglect were more Reback's responsibility than Parsons'; and Reback was directly responsible for the signature falsification and false oath, while Parsons had only ancillary responsibility.

As the division said in declining to follow the Board's recommendation on this point:

We do not share the Board's views on this point. We reject the first reason, of course, because we hold that Reback was not shown to have violated D.R. 7–101(A)(1). Thus the two attorneys committed identical substantive violations. We also cannot agree that Reback was

ultimately more responsible for the neglect and for the failure to tell Lewis of the status of her case. While it is true that Lewis spoke only to Reback and probably regarded him as her lawyer, Parsons was entrusted with pressing the first complaint and was obliged to see to it that the client was aware of the case's progress. Moreover, there is no basis for distinguishing between Reback's and Parsons' failures to supervise the associate to whom the lawyers delegated responsibility for the second complaint. Finally, we think that Reback and Parsons were equally responsible for the false signature and false oath to the notary. While Reback actually signed Lewis' name, it was done in Parson's presence, and he then filed the complaint with the court, knowing that the signature was false. The evidence did not show who took the second complaint to be notarized, so we cannot know who assured the notary that the signature was genuine.

■■■ We, like the division, take the view that to impose differing sanctions on the two respondents would be to adopt "inconsistent dispositions for comparable conduct" and thus to bring about the asymmetry that D.C. Bar R. XI § 7(3) was intended to avoid. Therefore, we will impose sanctions that are equal.

We turn to the more difficult question of what equal sanction should be imposed on the two respondents. Again, under D.C. Bar R. XI, § 7(3) our starting point must be the recommendation of the Board. Having taken into account the rule's policy against inconsistency, we must next consider whether to follow the Board's recommendation "would otherwise be unwarranted."

Given that this court's view of the seriousness of Parsons' behavior differs from the Board's and that we reject one of the findings of disciplinary violation by Reback, the Board's recommendations as to

---

**2.** There are, of course, other cases involving attorneys whose first offense was of a serious

nature. Our disposition of this case is consistent with those adjudications; *see* note 9, *infra.*

sanction are entitled to correspondingly less weight. Under the circumstances, they tend to afford some guidance on the outer limits of what discipline is appropriate, but it would be unwarranted to follow the Board's recommendations unless they coincide with our notion of appropriate discipline for respondents.

In order to determine what discipline is appropriate under the circumstances, we must assess respondents' violations in the light of all relevant factors. As we said in *In re Smith*, 403 A.2d 296, 303 (D.C.1979):

Each of these decisions emerges from a forest of varying considerations, many of which may be unique to the given case. In broad terms we may note that a list of considerations common to most cases would include the moral fitness of the attorney, the nature of the particular violation with which he is charged, and the need to protect the public, the courts, and the legal profession. Within the limits of our mandate to achieve a rough equality, each case must be reviewed upon its own terms.

*See also In re Haupt*, 422 A.2d 768, 771 (D.C.1980).

■■■■ The discipline we impose should serve not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct. *In re Wild*, 361 A.2d 182, 183 (D.C.1976). In some instances the protection of the public, the courts, and the bar will require a sanction as severe as removal from practice. In other cases, discipline as light as a reprimand will suffice. In all cases, our purpose in imposing discipline is to serve the public and professional interests we have identified, rather than to visit punishment upon an attorney. *In re Schwartz*, 99 N.J. 510, 493 A.2d 1248, 1254 (1985); *see also* Note, *Disbarment Procedure*, 47 IOWA L.REV. 984 (1962).[3]

The calculation of appropriate discipline must also take into account any aggravating or mitigating circumstances that surround the misconduct. *Haupt*, 422 A.2d at 771. An important factor is the previous record of the attorney. *In re Rosen*, 481 A.2d 451, 455 (D.C.1984). We have stated that the fact an attorney has had no prior disciplinary sanctions imposed in the past is "highly relevant and material" to the determination of an appropriate sanction. *In re Cope*, 455 A.2d 1357, 1361 (D.C.1983). On the other hand, we should not permit the fact that an attorney has had previous discipline to lead us to impose a sanction that is disproportionate to the violation. *Rosen*, 481 A.2d at 456.

■■■■ Applying these considerations, we look first to the actions of the attorneys before us, and we find serious misconduct. Their failure to tell their client that her case had been dismissed and, more discreditable, the false signing, notarization, and filing of a pleading formed a dishonest course of conduct that is plainly intolerable. Honesty is basic to the practice of the law. *See In re Ayala*, 102 N.M. 214, 693 P.2d 580, 582 (1985) (license to practice is representation that holder can be trusted to act with honesty and integrity). Clients must be able to rely unquestioningly on the truthfulness of their counsel. A lawyer's word to a colleague at the bar must be the lawyer's bond. A lawyer's representation to the court must be as reliable as a statement under oath. The reliability of a lawyer's pleadings is guaranteed by the lawyer's membership in the bar. *See* Super. Ct.Civ.R. 11. Filing a pleading or other paper subscribed by a signature is a representation that the signature is genuine.

■■■■ It is this dishonesty with client, counsel, and the court that makes this case noteworthy. We do not ignore the findings

---

3. Because of the effect of the disciplinary sanction on the attorney involved, the attorney is entitled to procedural due process. *In re Rufalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1967); *In re Thorup*, 432 A.2d 1221, 1225 (D.C.1981); *cf. In re Wild*, 361 A.2d at 184 (disbarment is punishment imposed on lawyer who, therefore, is entitled to due process).

of respondents' neglect or the fact that their neglect caused the client some prejudice in the form of delay. But a first instance of neglect, of itself, normally warrants only a reprimand or censure.[4] What looms largest here, therefore, is the fact that respondents' dishonesty prejudiced the administration of justice itself, even though their dishonesty, as such, caused the client little, if any, prejudice.[5] "The prohibition against 'conduct prejudicial to the administration of justice' bars not only those activities which may cause a tribunal to reach an incorrect decision, but also conduct which taints the decision making process." *In re Keiler*, 380 A.2d 119, 125 (D.C.1977). By placing before the Superior Court a falsely signed, notarized and filed pleading, respondents violated the processes of justice.

There is little precedent to suggest how the seriousness of respondents' misconduct should be reflected in a particular sanction.[6] We find no cases involving the submission of a falsely signed pleading in this jurisdiction, and few in others. In three cases from other jurisdictions, the highest court of the state imposed a public reprimand or censure upon an attorney who knowingly filed falsely signed documents with a court or other official body. *In re Spagnoli*, 89 N.J. 128, 445 A.2d 39 (1982); *In re McGuinn*, 272 S.C. 366, 252 S.E.2d 122 (1979); *In re Finley*, 261 N.W.2d 841 (Minn.1978).[7]

We view the transgressions of respondents as more serious than those in *Spagnoli*, *McGuinn* or *Finley*. Unlike the respondents in those cases, Reback and Parsons practiced a substantial deception on both their client and the court.[8] Even if those cases were closer in their facts to the case before us, it would be our firm view that the gravity of respondents' violations calls for a sanction far more substantial than public reprimand.

---

**4.** *In re Mailloux*, Bar Docket No. 66–79 (BPR June 14, 1981) (attorney neglect of client's lawsuit, resulting in dismissal for want of prosecution, warranted reprimand); *In re Roundtree*, Bar Docket No. 31–76 (BPR September 29, 1978) (attorney reprimanded for neglecting to file notice of claim which resulted in dismissal of subsequent suit); *In re Rosenthal*, Bar Docket No. 118–77 (BPR July 21, 1978) (attorney reprimanded for failing to file landlord/tenant action on behalf of client); *In re Mizel*, No. 18–75 (D.C. December 17, 1975) (attorney censured for neglect which resulted in dismissal of a suit for want of prosecution).

**5.** Indeed, no substantive harm presumably would have ensued even if the falsity of the signature on the new complaint had never come to light, since the facts stated therein were identical to those contained in the original complaint signed by the client. Of course, if respondents' dishonesty had led to adverse consequences, even if temporary, or would have done so if undiscovered, that would put them at far greater risk of severe discipline.

**6.** In *In re Keiler*, the dishonest conduct was quite different from respondents', *viz.*, using a law partner as a member of an arbitration panel without informing the adverse party. We imposed a suspension of one month.

**7.** *In re Spagnoli* involved an attorney who prepared and filed three affidavits purporting to be signed by his client and witnessed by respon-

dent, when in fact respondent signed his client's name. The published report of the case does not reveal the surrounding circumstances. Respondent asserted that his misdeeds did not result in economic gain. The Supreme Court of New Jersey imposed a public reprimand.

In *In re McGuinn* the Supreme Court of South Carolina imposed a public reprimand on an attorney who falsely signed his secretary's name as notary public on two affidavits of his client in support of a motion to recuse the trial judge. The affidavits contained serious, but apparently unfounded, charges that opposing counsel had bragged about "fixing" the trial judge. As in *Spagnoli*, the brief published report reveals little of the circumstances, not even whether the affiant knew and approved of the false signing.

In *In re Finley*, an attorney who was also a notary public notarized official forms known as "Bingo Information Sheets" without witnessing the signature of the purported signer. An investigation into illegal bingo operations revealed that the information sheets were irregular and not signed by the purported signer. Respondent was apparently unaware of the misinformation contained in the documents and of the fact that the purported signer had not, in fact, signed. The Supreme Court of Minnesota imposed a public censure.

**8.** While the opinions in *Spagnoli* and *McGuinn* do not furnish many details, we assume that if the attorneys had deceived their clients, the opinions would have so indicated.

■ Turning next to aggravation, we see no factor here that would suggest a sanction heavier than that which the violations themselves would otherwise call for. We note in this connection that there was discussion at oral argument and in the majority and dissenting opinions at division, 487 A.2d at 242 and 244, of the possibility that respondents may have committed the criminal offenses of forgery and uttering. D.C.Code § 22–1401 (1981). In our view, that mere possibility is not a significant factor under the circumstances of this case. The prosecuting authority never charged respondents with those offenses. The disciplinary hearings were not conducted with a view to determining whether respondents committed them. Respondents did not admit guilt of those offenses; to the contrary, if respondents were charged it would be necessary to resolve serious issues, including especially the matter of criminal intent. Of course, where an attorney has been convicted of a crime, different considerations come into play in the disciplinary process.[9] Even where a conviction does not mandate disciplinary action, it may be a factor suggesting a degree of severity. The same may be true of admissions of criminal conduct where there is no conviction. There are so many permutations of the relationship of possible criminal violations to bar discipline that generalizations are of little use. Instead, as we said in *Smith* of sanctions generally, "each case must be reviewed upon its own terms." *Smith*, 403 A.2d at 303. For the reasons stated above, the possibility that there was criminal conduct is not significant here.

Turning to factors of mitigation, we take into account that respondents have admitted their wrongdoing, *In re Fucetola*, 101 N.J. 5, 499 A.2d 222, 224 (1985), are contrite, *see In re Whitlock*, 441 A.2d 989 (D.C.1982), and have cooperated fully throughout these proceedings. After Mrs.

Lewis dismissed them, they promptly returned the fee she had paid.

Most important is the fact that both Reback and Parsons have had unblemished records of professional conduct during 30 and 15 years of practice, respectively. This factor weighs heavily in favor of imposing upon them the lightest sanction that will serve the purposes of Bar discipline.

■ Suspension for as long a period as a year and a day is not necessary here, in our view, to serve the ends of Bar discipline or to reflect the considerations that apply to determinations of sanctions. If we were persuaded that protection of the public, the courts, and the profession required that respondents be removed from practice until some later time at which they could establish that they are fit for reinstatement, we would impose a suspension of over one year; a suspension of that length would not terminate automatically when its term had run, but would require respondents to reapply for permission to practice. D.C.Bar R. XI, § 21(1), (5). Considering the circumstances of the respondents' violations in the light of their unblemished records and other mitigating factors, we conclude that such a period of suspension is unwarranted.

We conclude, instead, that the considerations that shape Bar disciplinary determinations warrant a suspension of both respondents for six months. Imposition of a suspension of that length on attorneys with previously unblemished records gives the Bar and the public notice that we consider Reback's and Parsons' misconduct serious. It is severe enough, we are confident, to deter respondents or other attorneys from like conduct. It is consistent with the level of sanction we have imposed in other instances where an attorney's first disciplinary violation is of a serious nature.[10] The

---

9. *See, e.g.*, D.C.Code § 11–2502 (1981) (court has power to censure, suspend, or expel member of the bar convicted of crime); § 11–2503 (court shall strike attorney as member of the bar upon conviction of crime of moral turpitude).

10. *See, e.g., In re Washington*, 489 A.2d 452 (D.C.1985) (practiced law in a neighboring jurisdiction without a license; failed to appear or obtain replacement counsel; failed as conservator to file required reports; first offense; sanc-

protection of the public, the courts and the profession requires no greater sanction. Our concern over respondents' dishonest actions permits no less.

The respondents each shall be suspended from the practice of law for six months. This order of suspension shall be effective 30 days from the date of this opinion. D.C.Bar R. XI, § 19(3).

*So ordered.*

PRYOR, Chief Judge, dissenting in part:

I join the majority opinion except that I would impose the sanction of a year's suspension as to both attorneys.

NEWMAN, Associate Judge, dissenting:

I join the dissent of Terry, J., and write separately only to reaffirm my continued adherence to the views expressed in that portion of Section II of the division opinion which discussed the appropriate sanction, *In re Reback and Parsons*, 487 A.2d 235, 242–43, *vacated* 492 A.2d 267 (D.C.1985), that portion of Section II having been authored by me. This court does a disservice to the public in imposing such meager discipline on these two lawyers who have demonstrated fundamental flaws in the most vital area of basic honesty.

TERRY, Associate Judge, dissenting in part:

I join in the majority opinion except for the last five paragraphs. In my view, a six-month suspension is *too* short because it allows respondents to resume the practice of law as soon as the six months have passed. I would impose a suspension of a year and a day, thereby requiring respon-

dents to demonstrate affirmatively, by clear and convincing evidence, their fitness for readmission to the bar after their suspension has run its course. *See generally In re Harrison*, 511 A.2d 16 (D.C.1986); *In re Roundtree*, 503 A.2d 1215 (D.C.1985).[1]

Under our Rules Governing the Bar, an attorney suspended for one year or less is automatically reinstated to full membership in the bar as soon as the suspension period expires. D.C.Bar R. XI, § 21(3). An attorney suspended for more than a year, however, must apply for reinstatement, D.C.Bar R. XI, § 21(5), and "must demonstrate to this court, by clear and convincing evidence, that he or she meets the qualifications for reinstatement which are set forth in the rule." *In re Roundtree, supra*, 503 A.2d at 1217 n. 6. Thus our choice of a sanction determines whether a suspended attorney must bear the burden of proving that he or she is fit to resume the practice of law after suspension.

I would place that burden on Messrs. Reback and Parsons. The majority states, and I totally agree, that "[h]onesty is basic to the practice of law." *Ante* at 231 (citation omitted). The record in this case establishes that the respondents committed four separate acts of dishonesty. First, they falsely signed Mrs. Lewis' name to the second complaint. Second, they falsely procured the notarization of that complaint, which means that either or both of them must have represented to a notary that Mrs. Lewis' purported signature was genuine. Third, they filed the second complaint with the court, thereby "taint[ing]" the decision-making process with deception." *In*

---

tion: 3 months suspension); *In re Whitlock, supra* (failed to file brief, and comply with court orders and Bar Counsel requests; unblemished record for 10 years; sanction: 6 months suspension); *In re Dwyer,* No. M–61–80 (D.C. June 9, 1981) (failed to oppose motion to dismiss, improperly commingled clients' funds; no prior discipline; sanction: 3 months suspension).

1. I also reject the implication in footnote 5 of the majority opinion that, in deciding what sanction to impose, we may consider whether

respondents' client suffered any "substantive harm" as a result of their misconduct. Respondents' actions were affirmatively and grossly prejudicial to the administration of justice, and on that basis alone they warrant severe sanctions. The fact that Mrs. Lewis was not injured is a lucky break for her, but it does not lessen the gravity of respondents' breaches of the disciplinary code, nor should it serve to mitigate the penalty for those breaches.

*re Reback,* 487 A.2d 235, 239 (D.C.1985).[2] Fourth, they concealed from their client what they had done, which was itself a misrepresentation.[3] This series of dishonest acts convinces me that, at the very least, these respondents should be obliged to prove affirmatively that they are willing and able to practice law with absolute honesty. Contrition and remorse are not enough to meet this burden; what is required is a basic change in behavior. I would not allow Reback and Parsons to resume the practice of law until they demonstrate that such a change has taken place.

I repeat what I said when this case was before the division:

> Because this is a case of first impression, the sanction we impose here will be the standard for future cases. I think the court must be especially firm in letting the bar know that conduct such as that which these two attorneys engaged in will not be tolerated under any circumstances.

*In re Reback, supra,* 487 A.2d at 243 (concurring opinion). My view of the case has not changed. In my judgment, the facts of this case dictate a suspension of both respondents for a long enough period to require them to demonstrate their fitness to practice law: a year and a day. "Were it not for respondents' unblemished records, I would probably vote to suspend them for an even longer period." *Id.*

---

**2.** This quotation is taken from part I of the division opinion, which the en banc court has now adopted as its own. *Ante* at 229.

**3.** "Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresentation." *Andolsun v. Berlitz Schools of Languages of America, Inc.,* 196 A.2d 926, 927 (D.C.1964) (citation omitted).