## No. 79SA174

**The People of the State of Colorado, ex rel. Charles Goldberg, Special Prosecutor v. Robert M. Gordon, Jr.**

(607 P.2d 995)

Decided March 10, 1980.

Charles Goldberg, for complainant.

Robert M. Gordon, Jr., Pro se.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

A formal complaint was lodged with the Supreme Court Grievance Committee against respondent, Robert M. Gordon, Jr., who was admitted to the practice of law in Colorado on October 3, 1967.

The formal complaint evolved from respondent's attorney-client relationship with John R. Weirick and Betty J. Weirick during the period from September 1971 until September 1974.

The record shows the following history of this attorney-client relationship. The legal problems for which the Weiricks initially sought respondent's advise and assistance concerned unpatented mining claims in Clear Creek County, owned by the Gallium Mines Company, a Colorado corporation. The Weiricks were the owners as joint tenants of fifty percent, or ten thousand shares, of the outstanding capital stock of the corporation. Gordon R. Nedblake and Mabel Nedblake were the owners of the other ten thousand shares of the outstanding capital stock of the corporation.

Difficulties arose between the Weiricks and the Nedblakes concerning their respective contributions to the required annual assessment work on the unpatented mining claims. The Weiricks contended that the Nedblakes were not paying their share and as a consequence the Weiricks sought legal advice on their demand for reimbursement by the Nedblakes of the assessment costs and work on the various mining claims. The Nedblakes denied any obligation to contribute further moneys to the corporation, as a result of which respondent attorney sought to terminate the Nedblakes' interest in the mining claims. This he attempted to do by publishing a notice of forfeiture pursuant to 30 U.S.C. § 28, which provides a procedure for termination of the interest of "co-tenants" who fail to contribute to assessment work.

John Weirick died July 8, 1972, and respondent was employed by his widow, Betty Weirick, to perform legal work necessary to effect the transfer of decedent's assets to her. The only known assets of John Weirick

were a home valued at $4,000, owned in joint tenancy with his widow; $20 in their joint-tenancy bank account; an automobile valued at $100 and a pickup truck of no value, both titled in joint tenancy; and the ten thousand shares of capital stock of the Gallium Mines Company, also owned in joint tenancy by the decedent and his widow. Decedent had executed a holographic will naming his widow as his sole beneficiary, and a son by a former marriage as a contingent beneficiary.

Although all of decedent's assets were owned in joint tenancy with right of survivorship, respondent attempted to effect the transfer of these assets by a probate proceeding in the Clear Creek County District Court. Respondent caused an estate to be opened and the will to be admitted to probate but failed to take further steps to complete the attempted probate of the estate. He did file an inheritance tax application and eventually obtained the necessary releases of the inheritance tax lien from the state.

For the services rendered, Betty Weirick paid respondent $561.25. However, when respondent became aware that probate of the estate was unnecessary, he demanded an additional $400 before he would undertake to close the estate. This additional fee was, in the opinion of an expert witness, excessive for the services involved in closing the estate, even assuming the estate should have been opened in the first instance.

Respondent further insisted that "If the estate were properly handled my fee could be as much as $5,000." He attempted to obtain from Betty Weirick a $5,000 promissory note secured by a deed of trust on her home as security for the payment of the $400 additional fee and possible future fees for services that might be rendered concerning the estate matters. She refused to execute the security documents.

Respondent also claimed an attorney's lien on the Gallium Mines Company shares of stock that had been delivered to him by Mrs. Weirick for estate processing. He refused to release the certificates, although requested to do so many times, and held them until September 1974, when Betty Weirick paid him the additional $400 claim, although the estate had never been closed.

Additionally, respondent failed to timely communicate with his clients or to respond to questions concerning the legal matters he had undertaken. Eventually, Mrs. Weirick found it necessary to consult with a district judge of Clear Creek County to obtain guidance as to what course of action to pursue in extricating herself from the attorney-client relationship with respondent.

As a result of the foregoing, Betty Weirick filed a formal complaint with the Supreme Court Grievance Committee which, after amendment, charged respondent as follows:

(1) Violation of C.R.C.P. 241(B)(5) and Canon 6, DR 6-101(A)(1) through (3) of the Code of Professional Responsibility, in connection with the services undertaken by respondent for the estate of John R. Weirick, deceased.

(2) Violation of Canon 2, DR 2-106(A) of the Code of Professional Responsibility, for attempting to charge and obtain security for an excessive fee of $5,000.

(3) Professional misconduct for wrongfully asserting an attorney's lien under section 12-5-120, C.R.S. 1973, on Betty Weirick's stock certificates in the Gallium Mines Company when there was no "general balance of compensation" owed respondent for legal services rendered.

(4) Violation of C.R.C.P. 241(B)(5) and Canon 6, DR 6-101(A)(1) through (3) of the Code of Professional Responsibility, in failing to competently represent the affairs of both John and Betty Weirick in their corporate and mining law problems when respondent was wholly incapable of meeting the minimum standards of legal competence in these areas of the practice of law.

In the course of the disciplinary proceedings, respondent filed numerous preliminary motions directed to various aspects of the proceedings, all of which motions were in effect held to be inappropriate and unwarranted and thus denied by the hearings committee. Respondent refused to comply with a request and order for production of his complaining client's files, although a written waiver of the attorney-client privilege and a release of the files had been obtained from Mrs. Weirick. It was therefore necessary to threaten respondent with contempt of the Supreme Court pursuant to C.R.C.P. 250(C) in order to compel his compliance with the procedural rules.

Respondent elected not to testify in the evidentiary hearing, and, with the exception of three exhibits, offered no evidence in his own defense.

■ The hearings committee made extensive findings and concluded that each of the allegations of the formal complaint had been proven by clear and convincing evidence. Without repeating *haec verba* the findings and conclusions, the committee determined the issues against respondent as follows:

(1) Respondent failed to represent competently the affairs of his client by undertaking matters which he was incompetent to handle without associating counsel competent in the matter or without preparation adequate in the circumstances;

(2) Respondent provided legal services which were totally ineffective to accomplish the desired results;

(3) Respondent provided legal services which were totally unnecessary;

(4) Respondent failed to address specific legal issues and questions in a competent and timely fashion;

(5) Respondent failed to complete legal matters commenced on behalf of his client in a timely and competent fashion;

(6) Respondent charged or attempted to charge a clearly excessive fee and wrongfully attempted to obtain security for such fee;

(7)   Respondent wrongfully asserted an attorney's lien on certain documents and papers of his client.

We do set forth as particularly significant the following conclusions of the committee:

"(5)   Respondent was hired to perform certain limited legal tasks. He was not employed to attempt to patent the mining claims and he knew that the mining claims were not the property of Mrs. Weirick. He also knew that Mrs. Weirick was impecunious; nevertheless, Respondent persisted in his efforts to expand the work beyond that which was required and to obtain payment in advance or security in an amount clearly excessive and disproportionate to any reasonable fee for legal services for which he was employed. The Committee concludes that such lack of recognition on the part of Respondent of basic operative facts and principles of law was not sinister or fraudulent; rather that it evidences a total lack of understanding of fundamental principles essential to the practice of law. At no time during his representation of the Weiricks or during the pendency of this matter has Respondent recognized the errors enumerated above nor the inappropriateness of his action on behalf of his clients.

"(6)   At the time that Respondent asserted an attorney's lien on his client's stock certificates he had no basis for such a lien since the Respondent was not then owed a 'general balance of compensation'. Furthermore, the services rendered by Respondent were in large measure, if not totally, unnecessary. His client had repeatedly asked for her files and stock certificates and had advised Respondent that he would be paid when the estate was completed. The Committee concludes that Respondent either had no right to a lien or lost such a right by abusing the privilege afforded him by section 12-5-120, C.R.S. 1973."

Respondent and the disciplinary prosecutor were granted the opportunity to submit additional evidence, after the completion of the committee's deliberations, in mitigation and aggravation. The committee concluded after consideration of the additional evidence that it in all respects corroborated and supported the conclusion that the respondent is not competent to practice law.

We have concluded from our review of the record before the Grievance Committee that the findings and conclusions concerning respondent's unprofessional conduct and general incompetence to practice law are amply supported by the evidence. The Grievance Committee recommended that respondent's license to practice law be suspended for a period of three years, and that it be reinstated only upon a showing that respondent has attained a level of competence adequate to justify the reissuance of a license, including satisfaction of all requirements of the Board of Law Examiners for initial admission to the bar, including satisfactory completion of the bar examination.

A license to practice law is a proclamation to the public that the holder thereof is one to whom a member of the public may, with confidence, entrust his professional matters, with the assurance that in the performance of legal services the lawyer will perform the basic legal tasks undertaken, competently, ethically, and in accordance with the highest standards of professional conduct. The public, therefore, has every right to expect that one who has demonstrated through professional misconduct a lack of minimal professional competence required of attorneys, shall be appropriately disciplined. Respondent in this case has failed to measure up to the minimum standards of fitness to practice law.

It is therefore ordered that respondent, Robert M. Gordon, Jr., be suspended from the practice of law for three years and until further order of this court.

It is further ordered that respondent shall within sixty days hereof pay to the clerk of this court the costs incurred in this proceeding in the amount of $934.31.