IN THE MATTER OF GERARD J. WALLACE, AN
ATTORNEY AT LAW.

Argued October 20, 1986—Decided December 12, 1986.

*Colette A. Coolbaugh,* Executive Counsel, Disciplinary Review Board, argued the cause for Office of Attorney Ethics.

*Gerard J. Wallace* argued the cause *pro se.*

PER CURIAM.

This disciplinary proceeding arises from a presentment filed by the District XI Ethics Committee, which found that the respondent had violated *DR* 6–101 (handling a legal matter in such a manner as to constitute gross negligence), *DR* 9–102(C)

(failure to keep adequate records as required by *Rule* 1:21–6), and *DR* 1–102(A)(3) (engaging in illegal conduct that reflects adversely on his fitness to practice law).

The Disciplinary Review Board (DRB or Board) upheld the Ethics Committee's findings that respondent violated *DR* 6–101 and *DR* 9–102. However, the Board found that although respondent's conduct reflected adversely on his fitness to practice law in violation of *DR* 1–102(A)(6), his conduct was not illegal and therefore respondent had not violated *DR* 1–102(A)(3). In addition, the Board found that respondent's attempt to settle the ethics complaint against him was an attempt to exonerate himself from liability in violation of *DR* 6–102(A). The DRB recommended that respondent be suspended from the practice of law for six months.

I

The complaint lodged against the respondent involves his handling of the affairs of Mrs. Mary Zorzin, a non-ambulatory elderly woman who lived near respondent's office. Mrs. Zorzin initially approached the respondent about a collection matter against her granddaughter, one of the complainants in this case, and the preparation of a will. However, respondent's handling of these matters does not form the basis of the complaint. Rather, the relevant facts, as set forth by the DRB, are as follows:

On July 19, 1979 respondent had several telephone conversations with Mrs. Zorzin. At her request, he went to her home and picked up a bank check made payable to her dated June 21, 1979 for $4,116.40. He deposited the check in a non-attorney business account. His bank would not give him immediate cash for it since it was drawn against a different bank. Mrs. Zorzin had informed respondent that she was giving the money to a man at a stated rate of interest and would receive the interest on the nineteenth of each month. Mrs. Zorzin insisted that Respondent be at her residence within a short period of time because the man would be there that day. Respondent quickly prepared a promissory note. He did not have any note forms available and was not familiar with the contents of such a note but prepared one in the format of a receipt. He took the note and $4,116.40 in cash and went to her residence. Outside Mrs. Zorzin's residence respondent met a man who identified himself as Samuel B. Leavy. The undated promissory note stated

This is to acknowledge receipt of $4,116.40 from Gerard J. Wallace, Esq. who is representing Mary Zorzin in this transaction. This money is being received by way of a loan at an annual interest rate of 12% (1% per month), with interest checks being given to Mary Zorzin on the 19th of each and every month that the money is held. The principal amount of the loan is to be repaid in full to Mary Zorzin at a time to [sic] mutually determined between the parties. (the total yearly interest on this loan will amount to $493.97.)

Witnessed [sic] by:

/s/ Gerard J. Wallace

GERARD J. WALLACE

/s/ (201) 478–9718

/s/ Samuel B. Leavy

SAMUEL B. LEAVY

Beginning August 1979 and continuing until February 1980, Leavy went to respondent's office monthly and paid the interest of $41.16. Respondent would then hand-carry the cash to Mrs. Zorzin. When Leavy went to respondent's office Mrs. Ruth Williams, respondent's receptionist and placement coordinator for a business enterprise owned by Respondent, would give him a 3 x 5 card with his name, date and the amount received indicated. She did not keep books or records on these funds. She described Leavy as being between 5'6"–5'7", 150–160 pounds, grey hair and being in his late forty's or early fifty's. Respondent had no arrangement with Leavy that the money would be dropped off at his office instead of being paid directly to Mrs. Zorzin; nor did he question Leavy as to why he was doing this. Respondent assumed that Leavy was afraid of the dogs at the Sexton residence. After the February 1980 payment, Leavy did not make another payment until September when he paid the amount in arrears. His next payment was in November which included September and October. Four months later he paid for the period November through February. After making two payments in April 1981, Leavy continued to pay the interest amount until September 1981 when he stopped making any payments.

*        *        *        *        *        *        *        *

Although respondent had frequent conversations with Mrs. Zorzin he never inquired about her relationship with Leavy. He did not discuss with Leavy where Leavy could be contacted, nor did he ever obtain any identifying information from him. He also did not inquire why Leavy was late in making the monthly payments at various times or why he stopped making payments.

*        *        *        *        *        *        *        *

After Mrs. Zorzin died in March 1982, Mrs. Vasilko went to respondent to obtain her grandmother's money. Respondent informed her that a man he identified as Leavy had the money. Respondent told her that he did not know how to contact Leavey [sic]. She claimed respondent also stated that he was not responsible for the money. On April 12, 1982 Mrs. Vasilko and Mrs. Sexton wrote a letter to the ethics committee complaining about respondent.

As a result of this complaint, respondent's books and records were audited on Aug. 1, 1983. Respondent had cancelled the initial appointment for July 26, 1983. At that session respondent told the auditor that the Zorzin matter had been settled. Respondent had entered into an agreement with Mrs. Vasilko and Mrs. Sexton on July 29, 1983 whereby he purchased the promissory note for $3,000. In return, Mrs. Vasilko and Mrs. Sexton agreed not to participate in or institute any suits or complaints against respondent concerning the handling of any of the affairs of Mrs. Zorzin. They agreed to dismiss any pending actions, in particular the ethics complaint. Respondent claimed he entered into this agreement because this matter was becoming too time consuming. His law practice was only part-time, as he was involved in a number of other businesses. He also concluded that he might have been partly at fault in not protecting the interests of his client.

The audit disclosed that respondent had forwarded four checks to Mrs. Zorzin. On Nov. 12, 1980 she was sent a check for $77.32 which represented two monthly payments less $5 for respondent's processing of the check. On April 1 and 22 and May 25, 1981 she was sent checks each for $41.46. Respondent said he sent Mrs. Zorzin the November check because she had moved and was no longer a short distance away. He sent the other checks because on those days he was not in her general area. He said he personally delivered the other payments directly to her. The auditor noted that respondent was not able to produce the requested records and that he had not performed monthly reconciliations of trust account balances to monthly bank statements.

## II

After reviewing the record, we conclude that the DRB was correct in finding that the respondent's actions were grossly negligent and unethical.[1] He admittedly had limited experience in the preparation of promissory notes. His draftsmanship of this note was seriously deficient. The note did not include a due date, a default or acceleration clause, or even an address for the borrower.

---

[1]The respondent claims that he was denied a fair hearing by the Ethics Committee because the presenter and one panel member knew his ex-wife, and because another panel member had been his opposing counsel in a divorce proceeding. He also claims that the subsequent review by the DRB was tainted by the impropriety of the Ethics Committee proceeding. We are convinced, based on our own careful review of the record, that the respondent received a fair hearing, and that there was no misconduct by the presenter, the Ethics Committee or the DRB.

Moreover, respondent's conduct after the execution of the note was highly unprofessional. As the DRB explained:

> More disturbing was respondent's totally unsatisfactory conduct following the loan of money to Leavy. Although he had had frequent conversations with Mrs. Zorzin, he never once inquired into Leavy's background or address so he would be able to protect her interests should a legal problem develop. * * * He kept no records of Leavy's payments except for an informal sheet which only indicated the date Leavy made the payments and not the amounts paid. At no time did he request of Leavy sufficient information so he could contact him if necessary.

It is undisputed that an attorney owes his client a duty to pursue diligently the matters entrusted to him and to exercise the highest degree of fidelity and good faith. *Matter of Schwartz*, 99 *N.J.* 510 (1985); *Matter of Stein*, 97 *N.J.* 550 (1984); *Matter of Dolan*, 76 *N.J.* 1 (1978); *Matter of Loring*, 73 *N.J.* 282 (1977). It is not enough simply to follow a client's instructions, for a client cannot foresee or be expected to foresee the great variety of legal problems that may arise. *In re Lanza*, 65 *N.J.* 347, 352 (1974). This is especially true where, as here, the client is elderly and infirm and particularly dependent on her attorney's judgment.

As this Court has often stated, the goal in disciplinary proceedings is not to punish the attorney, but to preserve public confidence in the legal profession and protect the public from unscrupulous or irresponsible attorneys. *In re Kushner*, 101 *N.J.* 397 (1986); *In re Goldstaub*, 90 *N.J.* 1 (1982); *In re Wilson*, 81 *N.J.* 451 (1979); *In re Stout*, 75 *N.J.* 321 (1978). In this context, respondent's actions are particularly disturbing. As the DRB stated,

> [a] license to practice law is a proclamation to the public that the holder thereof is one to whom a member of the public may, with confidence, entrust his professional matters, with the assurance that in the performance of legal services the lawyer will perform the basic legal tasks undertaken, competently, ethically, and in accordance with the highest standards of professional conduct [quoting *People ex rel. Goldberg v. Gordon*, 199 *Colo.* 296, 607 *P.*2d 995, 998 (1980).]

We also share the DRB's concern about the respondent's attempt to settle the ethics complaint. Such behavior shows extreme indifference to the intent of the Disciplinary Rules.

Public confidence in the legal profession would be seriously undermined if we were to permit an attorney to avoid discipline by purchasing the silence of complainants.

We therefore agree with the DRB that respondent handled Mrs. Zorzin's affairs in a manner that constituted gross negligence, in violation of *DR* 6–101(A)(1). He also violated *DR* 9–102(C) by failing to maintain adequate records pursuant to *Rule* 1:21–6, and he attempted to limit his liability for his ethical violations contrary to *DR* 6–102(A). This conduct adversely reflects on his fitness to practice law. *DR* 1–102(A)(6).

Based on our review of the record, we conclude that the sanction recommended by the DRB is appropriate. We therefore order that respondent be suspended from the practice of law for six months. In addition, respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that GERARD J. WALLACE of CLIFTON, who was admitted to the bar of this State in 1974, be suspended from the practice of law for a period of six months, effective January 5, 1987, and until the further order of this Court; and it is further

ORDERED that GERARD J. WALLACE reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that GERARD J. WALLACE be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that GERARD J. WALLACE comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.