81 P.3d 370 (2003)
The PEOPLE of the State of Colorado, Complainant,
v.
Robert E. WOODFORD, Respondent.
No. 02PDJ007.
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.
October 29, 2003.
Opinion by a Hearing Board consisting of the Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members LAIRD T. MILBURN and DOUGLAS D. PIERSEL, both members of the bar.
*371 Attorney Regulation. The Hearing Board suspended Respondent Robert E. Woodford, attorney registration number 16379 from the practice of law for a period of fifteen months following a trial in the within matter. In one matter, respondent violated Colo. RPC 1.1 by preparing unenforceable trust documents and accomplished no tax objectives or asset protection for the client. Respondent failed to advise the client of available legal methods to minimize tax liability and provide protection of his assets; rather, respondent directed the client down a course of action incapable of satisfying his intended objectives and posing a significant risk of serious harm constituting a violation of Colo. RPC 1.2(a). When respondent's advice resulted in a lien attaching to the client's property, the client asked respondent to remedy the problem. Respondent failed to undertake prompt corrective action subsequent to his client's request resulting in neglect and a violation of Colo. RPC 1.3. Respondent charged an unreasonable fee in violation of *372 Colo. RPC 1.5(a). In another matter, respondent failed to structure a trust as requested by the client over a ten month period constituting neglect in violation of Colo. RPC 1.3. Additionally, respondent's failing to file personal tax returns for the years 1996, 1997 and 1998 constitutes a misdemeanor and a violation of Colo. RPC 8.4(b). Respondent was ordered to pay the costs of the disciplinary action.

OPINION AND ORDER IMPOSING SANCTIONS

SANCTION IMPOSED: ATTORNEY SUSPENDED FOR FIFTEEN MONTHS
A trial pursuant to C.R.C.P. 251.18(d) was held on November 25, 2002 before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") Roger L. Keithley and two Hearing Board Members, Laird T. Milburn and Douglas D. Piersel, both members of the bar. Debora D. Jones, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Robert E. Woodford, the respondent, ("Woodford") failed to appear in person or by counsel.
In Case No. 02PDJ007, the People filed a Complaint on January 24, 2003. On February 19, 2002, Woodford filed an Answer to the Complaint. On March 22, 2002, the People filed an Amended Complaint and Woodford did not file an Answer thereto. The matter was initially set for trial on July 15 and 16, 2002 and, upon Woodford's unopposed motion, was continued to November 25 and 26, 2002. On November 15, 2002, the People moved for default on Case No. 02PDJ007, which was denied on the grounds that it was not timely filed.
On March 5, 2002, the People filed a Complaint in Case No. 02PDJ015. Upon motion of the People, the PDJ consolidated the two cases on April 4, 2002.
At the trial on November 25, 2002, the following witnesses testified on behalf of the People: Erwin Gemmer, D.C. via telephone; James Ingraham; John DeBruyn; Hollie Wieland; Magistrate E. David Griffith, and John Edward Smith. The People's exhibits 1 through 10 were admitted into evidence. Woodford's letter dated November 18, 2002 was marked as exhibit A and admitted into evidence.[1] The Hearing Board considered the People's argument, the testimony of the witnesses, the exhibits admitted, and made the following findings of fact which were established by clear and convincing evidence.

I. FINDINGS OF FACT
Woodford has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court on January 9, 1987, and is registered upon the official records of the Court under attorney registration number 16379. He is subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1(b).

Case No. 02PDJ007
In 1998, John Edward Smith ("Smith") consulted Woodford regarding the protection of his assets from taxes and creditors. Woodford advised Smith that by placing his home and vehicle in a trust, he could avoid paying taxes in the future, and could protect his assets from creditors. Woodford told Smith the tax code was illegal. He advised Smith to write a letter to the United States Attorney General stating that Smith desired to stop paying taxes. Woodford said he would structure the trust so that Smith was to manage the trust and have control and use of the trust property including the ability to remove and utilize funds and to refinance his home. Smith paid Woodford $2,500 for preparing the trust documents.
On March 10, 1998, Smith executed trust documents prepared by Woodford. On the same day, Smith and his wife executed a Quit Claim Deed prepared by Woodford intended to transfer Smith's home to the trust. The deed was recorded on September 25, 1998. *373 Woodford did not explain the documents, the procedure, or the effect of the procedure to Smith. The trust instrument stated in part that the trust property could not be "held under attachment for Trustee(s) personal debts." See People's exhibit 1, Article XI. The trust instrument further stated in part that "[t]his "Trust Estate" shall have no tax liability in any jurisdiction which is foreign to the freely associated compact state of America, in which this "Trust Estate" is domiciled." See People's exhibit 1, Article XXIII. Smith's mother, mother-in-law and Woodford were appointed as trustees of the trust.
At the time he performed these services for Smith, Woodford had an outstanding debt to a law firm for unpaid attorneys' fees. The law firm reduced the obligation to judgment and filed a lien on all real property held by Woodford in El Paso County. Because Woodford had drafted the Smiths' Quit Claim Deed so that it transferred their home to the trustees as individuals, including Woodford, the law firm's judgment against Woodford encumbered the Smiths' property.
Smith discovered the judgment the day the loan to refinance his home was to close. Smith informed Woodford who, in turn, wrote a letter to the title company explaining the situation. Woodford drafted and recorded a subsequent Quit Claim Deed which was supposed to correct the encumbrance upon Smith's property. Woodford's actions did nothing to correct the encumbrance his actions had imposed upon Smith's property.
Woodford did not take any meaningful steps available to clear title to the Smiths' home. Significantly, he did not make efforts to pay the judgment. Smith retained counsel to terminate the trust, who filed Case No. 99PR0599 in El Paso District Court, captioned In the Matter of: Schaal Smith Family Trust. By Order dated October 8, 1999, the trust was terminated and the assets distributed. Smith expended $2,300 in attorney's fees to terminate the trust Woodford had provided to Smith. Smith thereafter filed for bankruptcy protection.
Woodford has not refunded any portion of the fees paid to him for the erroneous legal work and advice he rendered to Smith, nor has he made efforts to pay restitution to Smith for the $2,300 paid to correct the encumbrance imposed against his property by Woodford's actions.
In connection with the judgment obtained by the law firm against Woodford, the law firm conducted at least three C.R.C.P. 69 proceedings against Woodford.[2] Woodford gave testimony in the C.R.C.P. 69 proceedings that although he had income during 1996, 1997 and 1998 he had not filed tax returns for those years and may owe taxes.

Case No. 02PDJ015
In June 2000, Erwin Gemmer, D.C. ("Gemmer") retained Woodford to assist him in sheltering his assets from tax liability. Woodford agreed to prepare the documents Gemmer requested for $4,500 and requested $3,000 up front. On June 2, 2000, Gemmer paid Woodford $2,000 and paid him an additional $1,000 on June 6, 2000.
On June 16, 2000, Gemmer provided written direction to Woodford outlining how he envisioned structuring a trust. On the same day, Woodford wrote to Gemmer stating that he would draft a trust, assist in transferring property into the trust, provide Gemmer with trust management training, render advice on restructuring his business activities, and assist with problems should they develop.
Over the next several months, Gemmer repeatedly attempted to reach Woodford but was able to speak with him only twice. In late October 2000, Gemmer reached Woodford's assistant and informed her that Gemmer had drafted some documents which he wished Woodford to review. By undated letter, Gemmer wrote to Woodford and requested that he review documents.[3]
On November 10, 2000, Woodford provided Gemmer with information which Gemmer had not requested, and stated that he had *374 not yet received the materials Gemmer wanted him to examine.
On November 27, 2000, Woodford wrote Gemmer a letter stating that he had studied Gemmer's documents and described his understanding of how the trust would function. Woodford requested that Gemmer confirm this was the arrangement he desired. Gemmer promptly telephoned Woodford and confirmed that it was.
Thereafter, Gemmer was able to reach Woodford one time out of approximately forty times Gemmer attempted to contact him from November 27, 2000, to April 13, 2001. Gemmer informed Woodford's secretary that he would file a request for investigation if Woodford did not return Gemmer's funds. Shortly thereafter, Woodford wrote to Gemmer stating that he had been waiting for a written confirmation to proceed with the work Gemmer requested.
Woodford spent an unknown amount of time reviewing documents Gemmer had sent. Gemmer never received a written record of the time Woodford had expended.
On April 20, 2001, Gemmer again requested that Woodford refund his payments. On April 20, 2001, Gemmer provided notice to Woodford that he had obtained other counsel and again requested a refund of the $3,000.
To date, Woodford has not refunded any portion of the $3,000 to Gemmer.

II. CONCLUSIONS OF LAW

Case No. 02PDJ007
The Amended Complaint in Case No. 02PDJ007 alleges that Woodford violated Colo. RPC 1.1 (an attorney shall provide competent representation to a client) by preparing an invalid trust for clients; Colo. RPC 1.2(a)(an attorney shall abide by a client's objectives) by failing to pursue the objectives of his client; Colo. RPC 1.3 (an attorney shall act with reasonable diligence and promptness in representing a client) by neglecting legal work entrusted to him; Colo. RPC 1.5(a)(an attorney's fee shall be reasonable) by charging an excessive fee for the work he performed for the Smiths; and Colo. RPC 8.4(b)(it is professional misconduct for an attorney to commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects) by failing to file tax returns for the years 1996, 1997 and 1998 as required by 26 U.S.C. § 7203 (1982).[4]
In the Smith matter, the trust created by Woodford was not recognized by the IRS and did not address or accomplish the purposes Smith paid Woodford to achieve. The trust agreements prepared by Smith served no useful purpose whatsoever. Woodford violated Colo. RPC 1.1 by preparing unenforceable trust documents.[5] Woodford's actions accomplished no tax objectives or asset protection for Smith.
Woodford failed to advise Smith of available legal methods to minimize tax liability and provide some measure of protection of his assets against existing debt and creditors. Rather, Woodford directed Smith down a course of action incapable of satisfying his intended objectives and posing a significant risk of serious harm. By doing so, Woodford violated Colo. RPC 1.2(a).
When Woodford's scheme resulted in a lien attaching to Smith's property, Smith asked Woodford to remedy the problem before his anticipated refinancing took place. Woodford issued a second Quit Claim Deed which had no effect upon the problem he had created. Smith's refinancing failed due, in part, to that encumbrance. Woodford took no further action to remedy the legal difficulties his course of action had triggered. Woodford's failure to undertake prompt corrective *375 action subsequent to his client's request to do so constitutes neglect and violated Colo. RPC 1.3.
The alleged violation of Colo. RPC 1.5(a) is more difficult. Woodford charged a fee of $2,500 for the work he did on Smith's case. Examination of the factors normally considered in determining whether a fee is reasonable do not realistically assist in this case.[6] The work Woodford performed, however, was not in accord with his client's objectives, was, in virtually every respect, incompetent, and was completely lacking in value of any kind to the client. Although a fee of $2,500 may well be reasonable for the preparation of a trust providing tax and asset protection benefits upon a client, under circumstances such as those present in this case, where the documents neither address the client's objectives, evidence some measure of meaningful legal analysis for the client, or confer some legally recognizable benefit upon the client, such a fee is not reasonable. See People v. Gordon, 199 Colo. 296, 607 P.2d 995 (1980). The fee charged by Woodford in this case is a violation of Colo. RPC 1.5(a).
Finally, Woodford's failing to file tax returns for the years 1996, 1997 and 1998 constitutes a misdemeanor pursuant to 26 U.S.C. § 7203 (1982) and a violation of Colo. RPC 8.4(b).[7]

Case No. 02PDJ015
The Amended Complaint in Case No. 02PDJ015 alleges that Woodford violated Colo. RPC 1.3 (neglect of a legal matter); Colo. RPC 1.16(d)(an attorney shall, upon termination of representation ... refund any advance payment of any fee not earned) and Colo. RPC 8.4(c)(it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Woodford failed to structure the trust Gemmer requested over a ten month period constituting neglect of a legal matter in violation of Colo. RPC 1.3. The sparse evidence before the Hearing Board establishes that Woodford completed some work for Gemmer by reviewing the documents Gemmer had provided to him and rendering an opinion on those documents. Because Woodford performed an unknown amount of work reviewing the documents provided to him by Gemmer, the evidence did not establish by a clear and convincing standard that there were funds owing to Gemmer upon Gemmer's termination of Woodford. Accordingly, the alleged violation of Colo. RPC 1.16(d) is dismissed.
Similarly, the alleged violation of Colo. RPC 8.4(c) is based on Woodford's conversion of Gemmer's funds. Based on the evidence presented at the trial in this matter, it was not established that funds remained unearned and were owed to Gemmer at the time of termination. Accordingly, the alleged violation of Colo. RPC 8.4(c) is dismissed.

III. IMPOSITION OF SANCTIONS
The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA Standards") *376 are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.
ABA Standard 4.52 provides that "[s]uspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." In the Smith matter, Woodford demonstrated lack of competence in preparing a trust inconsistent with the objectives of his client. Woodford's misconduct required Smith to employ other counsel to correct Woodford's actions and, thereby, caused injury to Smith. Woodford has not paid restitution to Smith.
ABA Standard 4.42(a) provides that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client. In the Gemmer matter, Woodford failed to complete the work requested over a ten-month period.
Pursuant to ABA Standard 5.12, suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11[8] and that seriously adversely reflects on the lawyer's fitness to practice. Woodford's failure to file tax returns for three years, although a misdemeanor, does seriously adversely reflect on his fitness to practice law. People v. Perkell, 969 P.2d 703, 704 (Colo.1998); People v. Borchard, 825 P.2d 999, 1000 (Colo.1992); People v. Emeson, 638 P.2d 293, 295 (1981). Accordingly, a period of suspension is warranted.
Aggravating and mitigating factors were considered pursuant to ABA Standards 9.22 and 9.32, respectively, in arriving at the appropriate sanction. Woodford did not appear at the trial in this consolidated matter; therefore, no mitigating factors were presented.
In aggravation, Woodford has prior discipline, considered an aggravating factor pursuant to ABA Standards 9.22(a). In March 1993, Woodford received a letter of admonition for engaging in a conflict of interest by representing opposing parties. In August 1997, pursuant to a Conditional Admission of Misconduct, Woodford stipulated to a private censure for failing to communicate with the client and failing to provide an accounting when requested upon termination. Smith's motive in both the Smith and Gemmer cases was selfish. See id. at 9.22(b). Woodford engaged in a pattern of misconduct[9], see id. at 9.22(c), he failed to participate in this consolidated disciplinary proceeding, see id. at 9.22(e), and he has demonstrated an indifference to making restitution, see id at 9.22(j).
Woodford states in a letter to Attorney Regulation Counsel that he has permanently closed his law practice. ABA Standard 9.4(d) provides that resignation from the practice of law prior to the completion of disciplinary proceedings is irrelevant for purposes of the imposition of the appropriate sanction.

IV. ORDER
It is therefore ORDERED:
1. ROBERT E. WOODFORD is suspended from the practice of law for a period of fifteen (15) months effective thirty-one (31) days from the date of this Order.
2. Woodford shall refund to John Edward Smith the fee paid by him in the amount of $2,500, plus statutory interest from March 10, 1998 to the date of payment, within ninety (90) days from the date of this Order.
3. Woodford shall pay the costs of this disciplinary proceeding.
*377 The People shall file a Statement of Costs within fifteen (15) days of the date of this Order; Woodford shall have five (5) days to file a Response thereto.
NOTES
[1] On November 22, 2002, the PDJ received a letter from Woodford dated November 18, 2002, addressed to Attorney Regulation Counsel stating that he would not be attending trial and was closing his office permanently.
[2] C.R.C.P. 69 authorizes a judgment creditor to place the judgment debtor under oath and make inquiry into the amount and location of assets that may be available to satisfy the judgment.
[3] It is unclear from the evidence when the documents were provided to Woodford for his review.
[4] An alleged violation of Colo. RPC 8.4(h) is listed in the heading of claim one only and not discussed in the Amended Complaint thereafter. Accordingly, the alleged violation of Colo. RPC 8.4(h) is not properly charged and is not addressed.
[5] Woodford's failure to provide competent representation went far beyond the preparation of the useless trusts. He rendered erroneous advice regarding Smith's continuing duty to pay taxes, and the methods available to minimize Smith's taxes and methods to protect Smith's assets from existing debts and creditors. Those actions, however, were not alleged as violations of Colo. RPC 1.1 and are not considered in arriving at an appropriate sanction.
[6] The factors normally considered are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
[7] 26 U.S.C. § 7203 provides in relevant part:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution.
[8] ABA Standard 5.11(a) provides that {d}isbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice; false swearing; misrepresentation; fraud; extortion; misappropriation; or theft, or the sale of distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses.
[9] The Complaint in 02PDJ015 alleged that Woodford "has prepared 25 to 30 trusts similar to the one he prepared for Smith." No evidence, however, was offered to support that allegation.